IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNCOMMON, LLC,**<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**CASETAGRAM LIMITED d/b/a CASETIFY**<br><br>　　　　　Defendant. | Case No.: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Uncommon, LLC ("Plaintiff" or "Uncommon"), by its attorneys, as and for its Complaint against Defendant Casetagram Limited d/b/a Casetify ("Defendant" or "Casetify") alleges as follows:

## NATURE OF THE CASE

1. This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, including 35 U.S.C. § 271. Uncommon brings this action to protect one of its most valuable assets, namely, its patent rights in U.S. Patent No. 8,781,109.

## PATENT-IN-SUIT

2. U.S. Patent No. 8,781,109 ("the '109 patent"), titled "Electronic Device Case With Changeable Panel," was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on July 15, 2014, after full and fair examination. The inventor assigned all rights in the '109 patent to Uncommon.

3. Uncommon owns all right, title, and interest in and to the '109 patent as well as the right to sue for, collect, and receive damages for past, present and future infringement of the

'109 patent. The '109 patent is valid and in force. A true and correct copy of the '109 patent is attached hereto as Exhibit A.

## THE PARTIES

4. Uncommon, LLC is a Delaware Limited Liability Company having its principal place of business at 2759 W. Lawrence Ave., Chicago, IL 60625.

5. On information and belief, Casetagram Limited is a Hong Kong Limited Liability Company, doing business as Casetify, and having its principal place of business at Metro Ctr 2, Rm 2320, 21 Lam Hing St., Kowloon Bay, Hong Kong.

6. On information and belief, Casetagram Limited d/b/a Casetify operates a business office in the United States at 555 West 5th Street, Suite 630, Los Angeles, CA 90013 and also conducts business in the United States through the internet which reaches and targets residents and citizens of Illinois.

7. On information and belief, Casetify has conducted and regularly conducts business within this District, has purposefully availed itself of the privileges of conducting business in this District, and has sought the protections and benefits of the laws of the State of Illinois.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over Plaintiff's claims, pursuant to 28 U.S.C. § 1221 and 28 U.S.C. § 1338(a).

9. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is conducting substantial business in the United States, this State, and this District, including offering for sale, selling, and distributing its accused products in this judicial District. On information and belief, Defendant, either directly or through subsidiaries or

2

intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Illinois, by making, shipping, distributing, offering for sale, selling, and advertising its products and/or services in the State of Illinois and this District. Defendant, directly and through subsidiaries or intermediaries, purposefully and voluntarily placed its infringing products and/or services into the stream of commerce within the Northern District of Illinois and/or intending for the infringing products to arrive at consumers within the Northern District of Illinois. Defendant has committed acts of patent infringement within the State of Illinois and this District. Plaintiff's cause of action for patent infringement arises at least from Defendant's activities in this District and activities directly implicating this District.

10. On information and belief, Defendant owns and operates an interactive commercial website at www.casetify.com through which customers may purchase the accused products.

11. On information and belief, Defendant's website is the primary means by which it sells the accused products.

12. On information and belief, Defendant has made substantial sales to citizens and residents of Illinois and of this District through its website.

13. On information and belief, Defendant specifically targets the consumers of Illinois and this District through various means, including by sending email advertisements for its accused products to consumers in Illinois and this District.

14. Defendant has purposefully established minimum contacts with this State and this District and has purposefully availed itself of the benefits of this State and this District by intentionally targeting Illinois consumers for the sale of its accused products, and, on information and belief, has made substantial sales of the accused products to customers in Illinois.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within this District, because Defendant's acts of infringement within this judicial District give rise to this action, and because Defendant does business in this District, including but not limited to making, shipping, distributing, offering for sale, selling, and advertising its accused products and/or services in this District.

## FACTUAL BACKGROUND

### Uncommon, LLC

16. Founded in 2009, Uncommon, LLC is a leading seller of protective cases for consumer electronic devices. In particular, Uncommon is well-known as a seller of smart phone and laptop protective cases featuring both ready-made and customizable graphical designs.

17. For example, customers can use Uncommon's website, www.getuncommon.com, to design their own smartphone, tablet, or laptop protective case using personal photographs or their own original artwork. Customers also have the option of purchasing pre-designed protective cases featuring, for example, artwork licensed from various artists.

18. Uncommon also markets and sells its protective cases through other channels, including directly through Apple, Inc. and in various retail locations run by Uncommon's licensees or distributors. Uncommon also markets and sells its protective cases on the internet at third party marketplaces such as Amazon.com and on the websites of Uncommon's licensees and distributors.

19. Through its marketing efforts, Uncommon has garnered a substantial following. Its protective cases have been featured in various media outlets and its cases have been personally used by many well-known celebrities.

20. Uncommon has also received favorable, unsolicited press coverage for its protective cases. Uncommon's protective cases have been featured, for example, on Elle Magazine's website ("Mother's Day Gift Guide 2013"), on Ebony Magazine's website ("The Best Gifts for Mama: Mother's Day Gift Guide 2013"), on Life & Style Weekly's website ("2013 Mother's Day Gift Guide"), on Teen Vogue's website ("35 Totally On-Trend Accessories"), in HOW Magazine's January 2013 issue, in Glamour Magazine's January 2013 issue, Essence Magazine's December 2012 issue, in Teen Vogue's December 2012 issue, and in Latitudes Magazine's November/December 2012 issue.

21. Uncommon's products have also been featured in television media, including, for example, on WCIU Chicago's "You & Me This Morning" as part of a May 10, 2013 segment about Mother's Day gifts and on a Fox 8 New Orleans' segment about Mother's Day Gifts in May 2013.

22. As part of its efforts to protect its valuable intellectual property, Uncommon, LLC has applied for, has acquired, or has been issued several United States patents.

23. In particular, Uncommon owns U.S. Patent No. 8,781,109, titled "ELECTRONIC DEVICE CASE WITH CHANGEABLE PANEL". *See* Exhibit A.

24. U.S. Patent No. 8,781,109 ("the '109 Patent") issued on July 15, 2014, and is currently unexpired.

25. The '109 Patent is directed toward a"[a]n electronic device case or system having a protective housing capable of aesthetic change." *Id.*, Abstract.

**<u>Defendant's Patent Infringement</u>**

26. Rather than innovate and develop their own unique technology that they could use to market and sell their products, Casetify has devoted their efforts to copying Uncommon's

technology, almost in its entirety, and touting it as their own idea.

27. Defendant has not obtained permission from Uncommon to use the invention claimed in the '109 patent.

28. On information and belief, Defendant makes, ships, distributes, offers for sale, sells, advertises, and/or imports phone cases and/or phone case components which directly and indirectly infringe the claims of the '109 Patent.

29. Upon information and belief, the infringing products include, but are not limited to, a design of protective case with an interchangeable "backplate" which is marketed as the New Standard™ case ("New Standard"). *See* Exhibit B, screenshot of https://www.casetify.com/make/iphone/iphone6s. Plaintiff believes that there may be further infringing products made, sold, or offered for sale by Defendant. However, the identity of these products is not known at this time, and will become available to Plaintiff through discovery.

30. On information and belief, Plaintiff also offered, and may still offer, a "Metaluxe" case which was or is similar to the New Standard case. *See* Exhibit C, review of Metaluxe case. On information and belief, the sole difference between the New Standard case and the Metaluxe case appears to be that the sidewall of the Metaluxe case is comprised of two separate pieces which come together to form a continuous sidewall. For the purposes of this Complaint, all references to the New Standard case refer also to and include the products sold or previously sold as the Metaluxe case.

31. On information and belief, Plaintiff sells or markets its infringing products, including at least the New Standard case, through various third parties. One example of such third party is Pharrell Williams' Billionaire Boys Club, which sells what appears to be the New Standard case on its website, www.bbcicecream.com. *See* Exhibit D, printout of product page

for "BILLIONAIRE BOYS CLUB CAMO IPHONE CASE". Specifically, Billionaire Boys Club sells at least a "Billionaire Boys Club Camo" version, an "Icecream Diner Girl" version, and an "Icecream Running Dog" version of the New Standard case. *See* Exhibit E, printout of "All Products" page from shop.bbcicecream.com. On information and belief, these products infringe one or more of the claims of the '109 Patent. For the purposes of this complaint, all references to the New Standard case refer also to and include the Casetify iPhone cases sold or previously sold by Billionaire Boys Club.

32.     The New Standard case is marketed and advertised as having an interchangeable "backplate". *See* Exhibit B.

33.     Defendant also offers for sale and, on information and belief, sells, replacement and interchangeable "backplates" for the New Standard model of case. *See* Exhibit F.

34.     On information and belief, the New Standard case and interchangeable backplates infringe at least Claims 1, 2, 3, 4, 5, 8, 9, and 10 of the '109 Patent.

35.     Claim 1 of the '109 Patent reads:

> 1. A protective case for a portable electronic device, the case comprising:
>    a continuous sidewall for surrounding a periphery of a portable electronic device and having a plurality of openings defined therein for permitting access to ports or control buttons on the electronic device, the sidewall having a front edge and a back edge;
>    a removable primary back panel configured to fit within an open area defined by the continuous side wall and abut a portable electronic device positioned within the continuous sidewall;
>    a retaining flange extending from the back edge of the continuous sidewall to engage an outer surface of the removable back panel and retain the back panel within the open area.

36.     On information and belief, the New Standard case is a protectable case for a portable electronic device, namely, at least the iPhone 6, iPhone 6s, iPhone 6 Plus, and iPhone 6s plus.

37. On information and belief, the New Standard case comprises a continuous sidewall for surrounding the periphery of a portable electronic device.

38. On information and belief, the aforementioned "continuous side wall" of the New Standard case has a plurality of openings defined therein for permitting access to the ports or control buttons of the electronic device.

39. On information and belief, the aforementioned "continuous side wall" of the New Standard case has a front edge and a back edge.

40. On information and belief, the New Standard case further comprises a removable primary back panel configured to fit within an open area defined by the aforementioned continuous sidewall.

41. On information and belief, the aforementioned "back panel" of the New Standard case is configured to abut a portable electronic device positioned within the continuous sidewall.

42. On information and belief, the New Standard case further comprises a retaining flange extending from the back edge of the continuous sidewall to engage an outer surface of the aforementioned removable back panel and retain the back panel within the open area.

43. On information and belief, the New Standard case directly infringes Claim 1 of the '109 Patent.

44. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 1 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

45. Claim 2 of the '109 Patent, dependent upon Claim 1, reads:

> 2. The protective case of claim 1, wherein the continuous sidewall comprises and upper portion including the front edge and a lower portion including the back

edge, and wherein the upper and lower portions connect together around a portable electronic device.

46. On information and belief, the continuous sidewall of the Metaluxe case comprises an upper portion including the front edge and a lower portion including the back edge, wherein the upper and lower portions connect together around a portable electronic device.

47. On information and belief, the Metaluxe case directly infringes Claim 2 of the '109 Patent.

48. On information and belief, components of the Metaluxe case, including interchangeable backplates, indirectly infringe Claim 2 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

49. Claim 3 of the '109 Patent, dependent upon Claim 2, reads:

> 3. The protective case of claim 2, further comprising a retaining flange extending from the front edge of the continuous sidewall.

50. On information and belief, the Metaluxe case further comprises a retaining flange extending from the front edge of the continuous sidewall.

51. On information and belief, the Metaluxe case directly infringes Claim 3 of the '109 Patent.

52. On information and belied, the components of the Metaluxe case, including interchangeable backplates, indirectly infringe Claim 3 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

53. Claim 4 of the '109 Patent, dependent upon Claim 1, reads:

> 4. The protective case of claim 1, wherein the removable primary back panel comprises and aesthetic image thereon.

54. On information and belief, the aforementioned primary back panel of the New Standard case comprises an aesthetic image thereon. *See* Exhibit B.

55. On information and belief, the New Standard case directly infringes Claim 4 of the '109 Patent.

56. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 4 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

57. Claim 5 of the '109 Patent, dependent upon Claim 4, reads:

> 5. The protective case of claim 4, wherein the removable primary back panel is replaceable with an alternate back panel having a different aesthetic image thereon.

58. On information and belief, the aforementioned "primary back panel" of the New Standard case is replaceable with an alternate back panel having a different aesthetic image thereon. *See* Exhibit B; Exhibit F.

59. On information and belief, the New Standard case directly infringes Claim 5 of the '109 Patent.

60. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 5 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

61. Claim 6 of the '109 Patent, dependent upon Claim 1, reads:

> 6. The protective case of claim 1, further comprising at least one alternate back panel for interchanging with the primary back panel.

62. On information and belief, the New Standard case further comprises at least one alternate back panel for interchanging with the primary back panel. *See* Exhibit B; Exhibit F.

63. On information and belief, the New Standard case directly infringes Claim 6 of the '109 Patent.

64. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 6 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

65. Claim 8 of the '109 Patent, dependent upon Claim 1, reads:

> 8. The protective case of claim 1, wherein the primary back panel snap fits into the continuous sidewall

66. On information and belief, the aforementioned "primary back panel" of the New Standard case snap fits into the aforementioned continuous sidewall of the New Standard case.

67. On information and belief, the New Standard case directly infringes Claim 8 of the '109 Patent.

68. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 8 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

69. Claim 9 of the '109 Patent, dependent upon Claim 1, reads:

> 9. The protective case of claim 1, further comprising a retaining flange extending from the front edge of the continuous sidewall.

70. On information and belief, the New Standard case comprises a retaining flange extending from the front edge of the continuous sidewall.

71. On information and belief, the New Standard case directly infringes Claim 9 of the '109 Patent.

72. On information and belief, components of the New Standard case, including interchangeable backplates, indirectly infringe Claim 9 of the '109 Patent because they are specifically manufactured to be used together in an infringing combination and Defendant specifically instructs end users to use the components together in an infringing combination.

73. Claim 10 of the '109 Patent reads:

> 10. A protective case system for a portable electronic device, the protective case system comprising:
> a continuous sidewall for surrounding a periphery of an electronic device and having a plurality of openings defined therein for permitting access to ports or control buttons on an electronic device, the sidewall having a front edge and a back edge;
> a plurality of interchangeable back panels, each one having a different image or color thereon and separately configured to fit within an open area defined by the continuous sidewall and abut a portable electronic device positioned within the continuous sidewall; and
> a retaining flange extending from the back edge of the continuous sidewall to separately engage an outer surface of each of the plurality of interchangeable back panels and retain the back panel within the open area;
> wherein one of the plurality of interchangeable back panels is placed within the open area during use, while remaining interchangeable back panels are stored for later use.

74. On information and belief, the New Standard" case and Casetify's replaceable backplate products together constitute a "protective case system for a portable electronic device".

75. On information and belief, the New Standard case comprises a continuous sidewall for surrounding a periphery of an electronic device.

76. On information and belief, the aforementioned "continuous sidewall" of the New Standard case has a plurality of openings defined therein for permitting access to ports or control buttons on an electronic device.

77. On information and belief, the aforementioned "continuous sidewall" of the New Standard case has a front edge and a back edge.

78. On information and belief, the Casetify "backplates" offered for sale on Casetify's website constitute a plurality of interchangeable back panels, each one having a different image or color thereon. *See* Exhibit F.

79. On information and belief, the aforementioned Casetify "backplates" are separately configured to fit within an open area defined by the aforementioned "continuous sidewall" of the "New Standard" case.

80. On information and belief, the aforementioned Casetify "backplates" are separately configured to abut a portable electronic device positioned within the aforementioned "continuous sidewall" of the "New Standard" case.

81. On information and belief, the "New Standard" case further comprises a retaining flange extending from the aforementioned back edge of the aforementioned continuous sidewall to separately engage an outer surface of each of the aforementioned Casetify "backplates" and retain the aforementioned Casetify "backplate" within the aforementioned open area.

82. On information and belief, when in use, one of the plurality of aforementioned Casetify "backplates" is placed within the aforementioned open area during use, while the remaining Casetify "backplates" are stored for later use.

83. On information and belief, Casetify's interchangeable "backplates" and its New Standard case either separately or in combination directly and indirectly infringe Claim 10 of the '109 Patent.

**COUNT I**
**DIRECT PATENT INFRINGEMENT**
**(35 U.S.C. § 271(a))**

84. Plaintiff incorporates by reference Paragraphs 1-83 above as if restated herein in their entirety.

85. Defendant has infringed and continues to infringe one or more of the claims of the '109 patent by making, using, importing, selling, and offering to sell, the Accused Products, including without limitation Defendant's New Standard case and other products depicted on Defendant's websites and sold on third party websites, all without authorization or license from Uncommon.

86. On information and belief, Defendant has been, and is currently, directly infringing the '109 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents.

87. The '109 Patent was and is valid and subsisting at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

88. Plaintiff is the owner of all right, title, and interest in and to the '109 Patent and possesses all rights of recovery under the '109 Patent.

89. On information and belief, Defendant had actual knowledge of the '109 Patent at all times relevant to this action.

90. Defendant's infringement of the '109 Patent has been and continues to be willful. Therefore, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and making this an exceptional case under 35 U.S.C. § 285.

91. Uncommon is informed and believes, and on that basis alleges, that Defendant has gained profits by virtue of its infringement of the '109 Patent.

92. As a direct and proximate result of Defendant's infringement of the '109 Patent, Plaintiff has suffered irreparable harm and monetary and other damages in an as-yet-undetermined amount. Furthermore, unless Defendant is enjoined by this Court from continuing its infringement of the '109 Patent, Uncommon has suffered, and will continue to suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

93. Unless and until enjoined, Defendant's infringing activity will continue to cause harm to Plaintiff that is irreparable and for which there is no adequate remedy at law.

## COUNT II
## INDUCED PATENT INFRINGEMENT
## (35 U.S.C. § 271(b))

94. Plaintiff incorporates by reference Paragraphs 1-93 above as if restated herein in their entirety.

95. On information and belief, Defendant has actively induced and is actively inducing others, including but not limited to the purchasers of its products, to infringe one or more of the claims of the '109 Patent at least by selling the components necessary to infringe the claims of the '109 Patent and instructing others, at least through its advertisements, to combine and/or use such components in a combination that infringes one or more of the claims of the '109 Patent with knowledge that such a combination would infringe the '109 Patent.

96. On information and belief, Defendant has been, and is currently, actively infringing the '109 Patent in violation of 35 U.S.C. § 271(b).

97. The '109 Patent was and is valid and subsisting at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

15

98. Plaintiff is the owner of all right, title, and interest in and to the '109 Patent and possesses all rights of recovery under the '109 Patent.

99. On information and belief, Defendant had actual knowledge of the '109 Patent at all times relevant to this action.

100. Defendant's infringement of the '109 Patent has been and continues to be willful. Therefore, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and making this an exceptional case under 35 U.S.C. § 285.

101. Uncommon is informed and believes, and on that basis alleges, that Defendant has gained profits by virtue of its infringement of the '109 Patent.

102. As a direct and proximate result of Defendant's infringement of the '109 Patent, Plaintiff has suffered irreparable harm and monetary and other damages in an as-yet-undetermined amount. Furthermore, unless Defendant is enjoined by this Court from continuing its infringement of the '109 Patent, Uncommon has suffered, and will continue to suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

103. Unless and until enjoined, Defendant's infringing activity will continue to cause harm to Plaintiff that is irreparable and for which there is no adequate remedy at law.

**COUNT III**
**CONTRIBUTORY PATENT INFRINGEMENT**
**(35 U.S.C. § 271(c))**

104. Plaintiff incorporates by reference Paragraphs 1-103 above as if restated herein in their entirety.

105. On information and belief, Defendant has sold and offered to sell, and is currently selling and offering to sell, a component or components of Plaintiff's patented invention which is a material part of Plaintiff's invention, namely, at least Defendant's "backplate" product.

106. On information and belief Defendant has sold and offered to sell, and is currently selling and offering to sell, such component or components knowing the same to be especially made or especially adapted for use in infringement of the '109 Patent.

107. Such component or components are not a staple article of commodity or commerce suitable for substantial noninfringing use.

108. On information and belief, Defendant has been, and is currently, actively infringing the '109 Patent in violation of 35 U.S.C. § 271(c).

109. The '109 Patent was and is valid and subsisting at all times relevant to this action and is entitled to a presumption of validity under 35 U.S.C. § 282.

110. Plaintiff is the owner of all right, title, and interest in and to the '109 Patent and possesses all rights of recovery under the '109 Patent.

111. On information and belief, Defendant had actual knowledge of the '109 Patent at all times relevant to this action.

112. Defendant's infringement of the '109 Patent has been and continues to be willful. Therefore, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and making this an exceptional case under 35 U.S.C. § 285.

113. Uncommon is informed and believes, and on that basis alleges, that Defendant has gained profits by virtue of its infringement of the '109 Patent.

114. As a direct and proximate result of Defendant's infringement of the '109 Patent, Plaintiff has suffered irreparable harm and monetary and other damages in an as-yet-

undetermined amount. Furthermore, unless Defendant is enjoined by this Court from continuing its infringement of the '109 Patent, Uncommon has suffered, and will continue to suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

115. Unless and until enjoined, Defendant's infringing activity will continue to cause harm to Plaintiff that is irreparable and for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Uncommon, LLC respectfully seeks the following relief against Defendant Casetagram Limited d/b/a Casetify:

A. Judgment that Defendant is liable for direct infringement U.S. Patent No. 8,781,109, in violation of 35 U.S.C. § 271(a).

B. Judgment that Defendant is liable for induced infringement of U.S. Patent No. 8,781,109, in violation of 35 U.S.C. § 271(b).

C. Judgment that Defendant is liable for contributory infringement of U.S. Patent No. 8,781,109, in violation of 35 U.S.C. § 271(c).

D. Damages in an amount to be proven at trial, but in no event less than a reasonable royalty, in accordance with 35 U.S.C. § 284.

E. Judgment that Defendant's patent infringement has been willful.

F. Treble damages as a result of the willful nature of Defendant's patent infringement.

G. Plaintiff's attorney's fees as a result of the exceptional nature of this case.

H. A preliminary, mandatory, and permanent injunction enjoining, restraining and ordering Defendant, and its officers, agents, servants, attorneys, and other persons who are in active concert or participation with it:

   1. To cease making, using, selling, or offering for sale any product which infringes the claims of the 8,781,109 Patent, including the "New Standard" case.

   2. To deliver and destroy all inventory, literature, advertisements, and other materials displaying any product which infringes the claims of the 8,781,109

        Patent, including the "New Standard" case.

I.      Pre-judgment and post-judgment interest, including costs incurred in this case.

J.      Any and all other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

DATED: April 27, 2016                                                           Respectfully submitted by,

/s/Edward L. Bishop
Edward L. Bishop
ebishop@bishoppatents.com
Nicholas S. Lee
nlee@bishoppatents.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
Phone (847) 969-9123
Fax: (847) 969-9124

*Attorneys for Plaintiff*
*Uncommon, LLC*